## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## MONROE DIVISION

**KENNETH R. RICHARDS, JR.**          **CIVIL ACTION NO. 19-0966**

                                       **SECTION P**

**VS.**

                                       **JUDGE TERRY A. DOUGHTY**

**MIKE STONE, ET AL.**                 **MAG. JUDGE KAREN L. HAYES**

### REPORT AND RECOMMENDATION

Plaintiff Kenneth R. Richards, Jr., a prisoner at Lincoln Parish Detention Center ("LPDC") proceeding pro se and in forma pauperis, filed the instant proceeding on July 25, 2019, under 42 U.S.C. § 1983. He names the following defendants: Sheriff Mike Stone, "Police Jury," Assistant Warden Pam Torbor, Randy Roberson, Courtney Hall, Skip Russell, Warden Jim Tuten, Deputy Odom, Deputy Carl Hammett, Dr. Pamela Hearn, Nurse Danielle Weaver, Nurse Jennifer Plunkett, Deputy Devin Skipper, Captain Randy Williams, and Major Chad Alexander.[1] For reasons below, the Court should dismiss Plaintiff's claims.

### Background

Plaintiff alleges that, on June 12, 2019, when he was being transported from the Lincoln Parish Courthouse Annex Building to LPDC, Deputy Odom, the driver, backed into another parked inmate-transport vehicle, driven by Deputy Carl Hammett, "very hard."[2] [doc. #s 1, p. 1; 10, pp. 1, 3]. Plaintiff hit his face and head against an iron cage in the vehicle and suffered lower back injuries, a neck injury, a headache, and jaw pain. [doc. #s 1, p. 2; 10; pp. 3-4].

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

[2] At the time, Plaintiff was a pre-trial detainee. [doc. # 10, p. 1].

Before Odom hit the other vehicle, Odom instructed Plaintiff and other prisoners to "place seatbelts on [] for safety purpose[s]." *Id.* at 4.

Plaintiff claims that, despite informing Odom that he suffered neck, back, and jaw injuries/pain following the collision, Odom failed to dial 9-1-1 to request an ambulance. *Id.* Rather, Odom emphatically instructed Plaintiff to refrain from speaking, maintaining that Plaintiff only endured a "small bump." *Id.* at 5. Odom then transported Plaintiff back to LPDC. *Id.*

When Plaintiff arrived at LPDC, he informed Assistant Warden Pam Torbor and Deputy Devin Skipper that he was injured in a wreck, that he suffered severe neck, back, and jaw pain, and that he wanted a physician to examine him. *Id.* at 5-6. Thirty minutes later, Torbor and Skipper informed Plaintiff that Odom and Hammett told them that "it wasn't a wreck [it was] just a little bump." *Id.* at 6. Plaintiff alleges that another prisoner in the van was transported to a medical center, but suggests that he did not receive any care on June 12, 2019. *Id.* at 6, 8.

Plaintiff claims that he notified all defendants that he required medical care, but all denied him adequate medical attention and treatment. *Id.* at 10.

Plaintiff claims that, on July 18, 2019, Nurse Weaver denied him care because Captain Williams told Weaver that "there was not an accident involving transport." [doc. #s 10, p. 8; 10-1, p. 2]. Weaver did, however, give Plaintiff "low back pain exercises" to perform "to help with back pain." [doc. # 10-1, p. 2].

On July 26, 2019, a physician at "Oschner LSUHSC-Monroe (formerly E.A. Conway)" examined Plaintiff, prescribed medication, and provided a "shot" for Plaintiff's pain. [doc. #s 10, p. 8; 10-1, p. 3]. However, Plaintiff did not receive an x-ray. *Id.* On September 11, 2019, Plaintiff was transported back to the hospital. [doc. # 10, p. 8].

Following Plaintiff's August 9, 2019 request for "something for back pain after IBU runs out[,]" a nurse informed Plaintiff that "Dr. Hearn ok'd Tylenol . . . ." [doc. # 10-1, p. 8]. On August 12, 2019, following Plaintiff's request to see Dr. Hearn, Nurse Weaver reminded Plaintiff that they previously provided Tylenol and Ibuprofen for his pain, and told him that "Dr. Hearn did not need to see [him] to put [him] on Tylenol." *Id.* at 7. Following another request for care on August 14, 2019, a nurse wrote Plaintiff: "You are on the list to see Dr. Hearn this week or when she next comes to LPDC to see inmates and she has already reviewed your records related to above mentioned info. You were seen in EAC ER, been prescribed meds, and administered meds as prescribed . . . . [sic]." *Id.* at 10. Following yet another request for care on August 29, 2019, Dr. Hearn informed Plaintiff that he has "been seen and eval[uated] at UHM for reported injuries." *Id.* at 12.

Plaintiff maintains that all defendants are conspiring to "cover[] up the 6-12-19 wreck incident." *Id.* at 9.

Plaintiff alleges that he has endured constant pain, suffering, and mental anguish. *Id.* He seeks relief from "police jury" and Sheriff Mike Stone because they are allegedly listed on an insurance policy and are thus "liable for all injuries and compensation." [doc. # 1, p. 2]. He seeks $325,000.00 from defendants in their official and "private" capacities for his pain, suffering, mental damage, emotional damage, strain, and stress. [doc. #s 4, p. 4; 10, p. 11].

## Law and Analysis

### 1. Preliminary Screening

Plaintiff is a prisoner who has been permitted to proceed in forma pauperis. As a prisoner seeking redress from an officer or employee of a governmental entity, his complaint is

subject to preliminary screening pursuant to 28 U.S.C. § 1915A.[3]  See *Martin v. Scott,* 156 F.3d 578, 579-80 (5th Cir. 1998) (*per curiam*).  Because he is proceeding in forma pauperis*,* his Complaint is also subject to screening under § 1915(e)(2).  Both § 1915(e)(2)(B) and § 1915A(b) provide for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

---

[3] Under 28 U.S.C. § 1915(h), "'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program."

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.* A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely. *Twombly, supra.*

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint. In making this determination, the court must assume that all of the plaintiff's factual allegations are true. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). However, the same presumption does not extend to legal conclusions. *Iqbal, supra.* A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991). A district court may dismiss a prisoner's civil rights complaint as frivolous based upon the complaint and exhibits alone. *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a

"[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. Negligence

As above, Plaintiff alleges that, before Odom hit the other vehicle, Odom instructed Plaintiff and other prisoners to "place seatbelts on [] for safety purpose[s]." [doc. # 10, p. 4]. Odom then backed into another inmate-transport vehicle. [doc. #s 1, p. 1; 10, pp. 1, 3]. Plaintiff hit his head against an iron cage in the van and suffered lower back injuries, a neck injury, a headache, and jaw pain. [doc. #s 1, p. 2; 10; pp. 3-4].

To state a claim under Section 1983, a prisoner must allege a violation of a constitutional right. Allegations of negligence do not state claims of constitutional dimension. *Daniels v. Williams*, 474 U.S. 327, 336 (1986) (holding that the United States Constitution does not address injuries inflicted by governmental negligence); *Hernandez ex rel. Hernandez v. Texas Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 882 (5th Cir. 2004) (recognizing that plaintiffs must "demonstrate culpability beyond mere negligence or even gross negligence.").

Here, to the extent Plaintiff seeks relief from Odom for careless driving, Plaintiff does not state a claim of constitutional dimension. He does not allege any facts indicating that Odom knew he faced a substantial risk of serious harm, that Odom was deliberately indifferent to such a risk, or that Odom intended to punish Plaintiff. Rather, Plaintiff suggests that Odom should have utilized additional care when driving. Odom's actions, under these allegations, amount to no more than possible negligent conduct.[4]  See *Baughman v. Hickman*, 935 F.3d 302, 309 (5th

---

[4] See *Leonard v. Concordia Par. Sheriff's Office*, 2018 WL 3147564, at *1 (W.D. La. May 16, 2018), report and recommendation adopted, 2018 WL 3131037 (W.D. La. June 26, 2018) (finding, where the detainee-plaintiff alleged that he was injured when a sheriff's office vehicle struck an object that fell from another vehicle, that the claim amounted to mere negligence); *Burns v. Davis*, 2017 WL 4250529, at *4 (S.D. Tex. Sept. 22, 2017) (finding, where the inmate-

Cir. 2019) ("Merely negligent driving . . . would not support a violation of a constitutional

right."). To the extent Plaintiff seeks to pursue a negligence claim, he should do so in state court.

### 3. Medical Care

A plaintiff "must demonstrate that a government official was deliberately indifferent to 'a

substantial risk of serious medical harm.'" *Bailey v. E. Baton Rouge Par. Prison*, 663 F. App'x

328, 330 (5th Cir. 2016) (quoting *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)). A

prison official acts with deliberate indifference to an inmate's health "only if he knows that [the]

inmate[ ] face[s] a substantial risk of serious harm and disregards that risk by failing to take

reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); see *Reeves v.

Collins*, 27 F.3d 174, 176-77 (5th Cir. 1994) (applying *Farmer* to a denial of medical care

claim). A plaintiff must establish that a prison official "refused to treat him, ignored his

complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would

clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d

339, 346 (5th Cir. 2006).

"[N]either an incorrect diagnosis nor the failure to alleviate a significant risk that should

have been perceived, but was not, is sufficient to establish deliberate indifference." *Blank v.

Bell*, 634 F. App'x 445, 448 (5th Cir. 2016). "Unsuccessful treatment, medical malpractice, and

acts of negligence do not constitute deliberate indifference; nor does a prisoner's disagreement

with his medical treatment, absent exceptional circumstances. Moreover, a delay in treatment is

---

plaintiff alleged that the defendant drove at excessive speeds in wet and foggy conditions, that
the claim sounded in negligence); *Porter v. Willis*, 2016 WL 1032303, at *3 (M.D. La. Feb. 16,
2016), report and recommendation adopted, 2016 WL 1064546 (M.D. La. Mar. 15, 2016); see
also *Crumbliss v. Darden*, 469 F. App'x 325 (5th Cir. 2012) (holding that prison officers were
not deliberately indifferent to a prisoner's safety when they transported him in a van that did not
have tie down straps for his wheelchair).

not unconstitutional, unless there has been deliberate indifference that results in substantial harm. In short, [d]eliberate indifference is an extremely high standard to meet." *Id.* (internal quotation marks and quoted sources omitted); see *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999) ("Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference."); *Frazier v. Keith*, 707 F. App'x 823, 824 (5th Cir. 2018) ("The choice between forms of treatment is a classic example of a matter of professional judgment and does not support a finding of deliberate indifference.").

### A. Defendant Odom

Plaintiff claims that, despite informing Odom that he suffered neck, back, and jaw injuries/pain, Odom failed to dial 9-1-1 and request an ambulance.  [doc. # 10, p. 4].  Instead, Odom vehemently instructed Plaintiff to refrain from speaking, maintaining that Plaintiff only endured a "small bump."  *Id.* at 5.  Odom then transported Plaintiff back to LPDC.  *Id.*

Plaintiff, however, does not allege that Odom failed to immediately transport him to LPDC.  In that respect, the undersigned takes judicial notice that the Lincoln Parish Courthouse Annex Building is approximately 3.2 miles from LPDC and that the travel time between the two locations is approximately seven minutes.[5]  GOOGLE MAPS, https://www.google.com/maps (last

---

[5] Under FED. R. EVID. 201(b)(2), courts "may judicially notice a fact that is not subject to reasonable dispute because it: . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Moreover, judicial notice may be taken at any stage of the proceeding.  FED. R. EVID. 201(f).  See *Deutch v. U.S.*, 367 U.S. 456, 470 (1961) (taking judicial notice of the distance between two cities); *Boyce Motor Lines v. U.S.,* 342 U.S. 337, 344 (1952) ("We may, of course, take judicial notice of geography."); *Munson S.S. Lines v. Newman*, 24 F.2d 416, 417 (5th Cir. 1928) (taking judicial notice of the distance between cities); *Hanes Supply Co. v. Valley Evaporating Co.,* 261 F.2d 29, 35 (5th Cir. 1958) (taking judicial notice of the distance between cities); *U.S. v. Perea-Rey*, 680 F.3d 1179, 1182 (9th Cir. 2012) (taking judicial notice of a Google map); *Pahls v. Thomas*, 718 F.3d 1210, n.1 (10th Cir. 2013) (taking judicial notice of a Google map as a source whose accuracy cannot reasonably be questioned); *U.S. v. Piggie*, 622 F.2d 486, 488 (10th Cir. 1980) ("Geography has long been peculiarly susceptible to judicial notice for the obvious reason that geographic locations are facts which are

visited Oct. 31, 2019).  Choosing to transport Plaintiff—who informed Odom that he was

suffering from "neck, back, and jaw injuries"—approximately 3.2 miles to LPDC rather than

requesting an ambulance does not reflect deliberate indifference.  Moreover, Plaintiff does not

allege that Odom denied him care when he arrived at LPDC or that LPDC lacked the means by

which to arrange timely and proper care for Plaintiff.

The Court should, accordingly, dismiss this claim.

### B. Defendants Torbor and Skipper

In his initial pleading, Plaintiff claims that he sought care from Assistant Warden Pam

Torbor, but Torbor "didn't make or file a report to medical" and she did not "have Plaintiff

evaluated or taken to a hospital for x-rays."  [doc. # 1, pp. 1-2].  In his second pleading, he

added, "I wasn't evaluated for injuries after arriving back to L.P.D.C. compound or taken to a

hospital to be check[ed]."  [doc. # 4, p. 3].

In his third pleading, Plaintiff claims that, when he arrived at LPDC, he informed Torbor

and Deputy Devin Skipper that Odom backed into a parked vehicle, that he suffered severe neck,

back, and jaw pain, and that he wanted a physician to examine him.  [doc. # 10, pp. 5-6].  Torbor

and Skipper consulted Odom and Hammett, who both stated that "it wasn't a wreck just a little

bump."  *Id.* at 6.  Torbor and Skipper then relayed their finding to Plaintiff.  *Id.*

Plaintiff does not plausibly allege that these defendants were deliberately indifferent to a

substantial risk of serious harm.  First, they did not ignore Plaintiff's request; rather they asked

---

not generally controversial . . . ."); *U.S. v. Burroughs*, 810 F.3d 833, 835 n.1 (D.C. Cir. 2016)
(taking judicial notice of a Google map); *Feminist Majority Found. v. Hurley*, 911 F.3d 674, 711
(4th Cir. 2018); *Livingston Christian Schs. v. Genoa Charter Twshp.*, 858 F.3d 996, 1008 (6th
Cir. 2017); see also David J. Dansky, *The Google Knows Many Things: Judicial Notice in the
Internet Era,* 39 Colo. Law. 19, 24 (2010) ("Most courts are willing to take judicial notice of
geographical facts and distances from private commercial websites such as MapQuest, Google
Maps, and Google Earth.").

Odom and Hammett about the purported source of Plaintiff's injuries and ascertained that Plaintiff was involved in only a minor vehicle collision.

Moreover, Plaintiff does not plausibly allege that he was exposed to a substantial risk of serious harm following the collision, considering that the vehicle was traveling in reverse in a parking lot and that the vehicle collided with a parked vehicle. Plaintiff attaches an "Activity Sheet for Booking," which states that, on either the day of the incident or the next day, he complained that his cheek was swollen and that Odom did *not* hit the other vehicle "hard." [doc. # 10-1, p. 1]. While he now alleges that Odom hit the vehicle "very hard" and that he endured severe pain, he does not dispute that he submitted the aforementioned complaint.

Further, while Plaintiff told Torbor and Skipper that he was in severe pain, he does not plausibly allege that they *knew* he was exposed to a substantial risk of serious harm, considering that Odom and Hammett informed them that the incident involved only "a little bump."

Overall, Torbor and Skipper's actions do not reflect the type of "'cold hearted, casual unwillingness to investigate what can be done for a man who is obviously in desperate need of help'" that the Fifth Circuit has "recognized as necessary to constitute deliberate indifference." See *Davis v. Lithicum*, 574 F. App'x 379, 380 (5th Cir. 2014); *Zaunbrecher v. Gaudin*, 641 F. App'x 340, 346 (5th Cir. 2016) (defining deliberate indifference as "egregious intentional conduct"). The Court should dismiss these claims. See *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001) ("Deliberate indifference is an extremely high standard to meet.").

### C. Nurse Weaver

On July 18, 2019, Plaintiff requested care from a physician for his "back problems." [doc. # 10-1, p. 2]. On July 19, 2019, Nurse Weaver responded: "I discussed with Captain

Williams about incident the above offender is talking about and Captain Williams said there is not an incident report because there was not an accident involving transport. [sic]." *Id.* Weaver did, however, give Plaintiff "low back pain exercises" to perform "to help with back pain." *Id.*

Plaintiff does not plausibly allege that Weaver was deliberately indifferent to a substantial risk of serious harm. First, Weaver did not ignore Plaintiff's request; rather she asked Captain Williams about the purported source of Plaintiff's "back problems" and apparently concluded that there was no incident from which Plaintiff's purported injuries could arise. Moreover, she provided "back pain exercises" for Plaintiff's pain, which does not amount to refusing to treat Plaintiff, ignoring his complaints, intentionally treating him incorrectly, or engaging in any similar conduct that clearly evinces a wanton disregard for a serious medical need.

Further, that Plaintiff informed Weaver that he suffered "back problems" does not reveal that Weaver knew he was exposed to a substantial risk of serious harm. See *Haddix v. Kerss*, 203 F. App'x 551, 553 (5th Cir. 2006) (finding that the plaintiff did not "show" that he faced a substantial risk of serious harm where "[t]he result of the defendants' actions was unrelieved, pre-existing, back and shoulder pain, not a worsening of his condition or other serious harm."); *Mayweather v. Foti,* 958 F.2d 91, 91 (5th Cir. 1992) (stating that continuing back pain, while unpleasant, does not demonstrate a constitutional violation).

The Court should dismiss this claim.

### D. Denial of an X-Ray

Plaintiff alleges that he was denied an x-ray at the hospital on July 26, 2019, and on September 11, 2019. [doc. # 10, p. 8]. He does not, however, identify a responsible defendant, and all of the defendants he does name are allegedly employed at LPDC.[6] See *id.* at 2.

Even assuming Plaintiff identified a responsible defendant, he does not state a plausible claim. He received care following the wreck:

° On July 18, 2019, a nurse or deputy gave Plaintiff "low back pain exercises" to perform "to help with back pain." [doc. # 10-1, p. 2].

° On July 26, 2019, a physician examined Plaintiff, prescribed medication, and provided a "shot" for his pain. [doc. #s 10, p. 8; 10-1, p. 3].

° On September 11, 2019, Plaintiff was transported to the same hospital. [doc. # 10, p. 8].

° Plaintiff concedes that he received Ibuprofen. [doc. # 10-1, p. 8].

° On August 12, 2019, a nurse reminded Plaintiff that he was previously provided Tylenol and Ibuprofen for his pain. *Id.* at 7.

° Following Plaintiff's request for care on August 14, 2019, a nurse wrote Plaintiff: "You are on the list to see Dr. Hearn this week or when she next comes to LPDC to see inmates and she has already reviewed your records related to above mentioned info. You were seen in EAC ER, been prescribed meds, and administered meds as prescribed . . . ." *Id.* at 10.

° Following Plaintiff's August 29, 2019 request for care, Dr. Hearn informed Plaintiff that he has "been seen and eval[uated] at UHM for reported injuries." *Id.* at 12.

Plaintiff's claim that he did not receive an x-ray amounts to a simple disagreement with the treatment he received. See *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) ("[W]hether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a

---

[6] Plaintiff even attaches a response to one of his grievances, in which Nurse Weaver stated that "Conway, not us, chose not to Xray him!" [doc. # 10-1, p. 14].

matter for medical judgment."); *Mathis v. Alexander*, 49 F.3d 728 (5th Cir. 1995) (finding complaints of not receiving an x-ray or follow-up examinations did "not rise to the level of deliberate indifference" because "[a] mere disagreement with one's medical treatment is not sufficient to state a cause of action . . . ."); *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("There is no . . . claim just because an inmate believes that medical personnel should have attempted different diagnostic measures or alternative methods of treatment."). The Court should dismiss these claims.

### E.  Remaining Defendants

Plaintiff claims, conclusorily, that he notified all defendants that he required medical care, but all denied him adequate medical attention and treatment. *Id.* at 10. Aside from the claims above, however, he fails to allege that he requested care from a particular defendant, when he requested care from a particular defendant, what care he requested, or what he told a particular defendant. See *Baughman v. Hickman*, 935 F.3d 302, 309 (5th Cir. 2019) ("We of course examine each defendant's actions individually."). In other words, he fails to allege that that any particular individual knew of a substantial risk of serious harm to his health and disregarded that risk.[7] The Court should dismiss this ostensible claim.

### 4. Police Jury and Sheriff Mike Stone

Plaintiff seeks relief from "police jury" and Sheriff Mike Stone because they are allegedly listed on an insurance policy and are thus "liable for all injuries and compensation."

---

[7] Section 1983 provides in relevant part: "Every person who . . . *subjects, or causes to be subjected*, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983 (emphasis added). If a person is not personally involved, then, *a fortiori*, he cannot subject another to, or cause, a deprivation of constitutional rights. See *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

[doc. # 1, p. 2].  Plaintiff does not allege whether the two defendants are named insureds or simply policy holders, and he does identify who or what is insured.

Regardless, that "police jury" and Stone are listed on an insurance policy does not indicate that they violated Plaintiff's constitutional rights.  He does not allege, in other words, that the defendants caused a violation of his constitutional rights; rather, he thinly implies that defendants might hold a policy of insurance contractually obligating an insurance company to pay Plaintiff for others' alleged constitutional violations.  See *Braden v. Texas A & M Univ. Sys.,* 636 F.2d 90, 92 (5th Cir. 1981) ("Liability is imposed for subjecting a person to the deprivation of rights secured by the Constitution and laws of the United States, not for breach of contract."). The Court should dismiss this claim.

### 5. Concealing the Vehicle Collision

Plaintiff claims, tacitly, that Captain Hammett and Deputy Odom "covered up" the vehicle collision by failing to report it.  [doc. # 10, p. 5].  He also claims that Odom and Hammett told Torbor and Skipper that the collision "wasn't a wreck just a little bump. [sic]."  *Id.* at 6.  As a result, Torbor and Skipper allegedly failed to provide medical care.  *Id.*  He claims further that Captain Williams informed Nurse Weaver that "there was not an accident involving transport."  [doc. # 10-1, p. 2].  As a result, Weaver only provided Plaintiff "low back pain exercises."  *Id.*

With the exception of the claim against Odom for negligent driving, which the undersigned addressed above, Plaintiff does not allege that Hammett or Williams personally participated in causing the collision.

Similarly, with the exception of the claim (addressed above) that Odom failed to request an ambulance following the collision, Plaintiff does not allege that, by concealing the collision,

14

Odom, Hammett, or Williams personally participated in depriving him of medical care. He does not, for example, allege that by concealing the incident they intended to deprive him of care. Further, he does not allege that when others asked them about the collision, they became aware that Plaintiff was exposed to a substantial risk of serious harm and nevertheless denied that the collision occurred. Otherwise stated, he does not allege that the inquiring individuals informed Odom, Hammett, or Williams that Plaintiff was in severe pain and that Odom, Hammett, or Williams then knew that Plaintiff's medical care could turn on their version of events. See *Herod v. Univ. of Texas Med. Branch*, 776 F. App'x 231, 232 (5th Cir. 2019) (concluding, where the plaintiff alleged that a warden covered up an incident which injured the plaintiff's shoulders, that the plaintiff failed to state a claim because the warden did not personally cause the incident).

The Court should dismiss these implausible, all-too-tenuous claims.

**6. Conspiracy**

Plaintiff alleges, without elaborating, that "all defendants are conspiring together and acting in concert by ways [sic] of covering up the 6-12-19 wreck incident[.]" [doc. # 10, p. 9].

"A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but 'a conspiracy claim is not actionable without an actual violation of section 1983.'" *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (quoting *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990)). "To plead a conspiracy under Section 1983, a plaintiff must allege facts that suggest: 1) an agreement between the private and public defendants to commit an illegal act, and 2) an actual deprivation of constitutional rights." *Shine v. Jones*, 743 F. App'x 566, 568 (5th Cir. 2018).

Here, Plaintiff does not plausibly allege a deprivation of his constitutional rights. Plaintiff alleges that defendants conspired to conceal the collision; however, the undersigned accepted Plaintiff's description of the collision as true (i.e. the collision defendants allegedly concealed) when analyzing the claims above and found that Plaintiff did not plead a plausible claim.

"No deprivation, no § 1983 conspiracy." *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019); *Curtis*, 761 F. App'x at 306 ("Because Curtis's federal conspiracy claim cannot stand without an underlying constitutional violation, it fails as well."); *Moore v. Grant*, 79 F. App'x 676, 677 (5th Cir. 2003).

Accordingly, the Court should dismiss this claim.

## 7. Defendants Roberson, Hall, Russell, Tuten, Hearn, Plunkett, and Alexander

Plaintiff names Roberson, Hall, Russell, Tuten, Hearn, Plunkett, and Alexander as defendants but, aside from the conclusory claim of conspiracy and the claim that all defendants denied him medical care, he makes no attempt to explain what each of these defendants did to violate his constitutional rights.  [See doc. # 10, p. 2].

 A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly,* 550 U.S. at 570. A civil rights plaintiff must support his claims with specific facts demonstrating a constitutional deprivation and may not simply rely on conclusory allegations.  *Ashcroft*, 556 U.S. at 662.

The Court should dismiss these defendants because Plaintiff does not raise a claim against them.

## Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Kenneth R. Richards,

Jr.'s claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

**IT IS FURTHER RECOMMENDED** that Plaintiff's request for appointed counsel and request for a hearing, [doc. # 10, p. 11], be **DENIED AS MOOT**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association***, 79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 4th day of November, 2019.

Karen L. Hayes
United States Magistrate Judge